No. 24-1874

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

*In re* Wawa, Inc. Data Security Litigation

Theodore H. Frank,
*Appellant.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 19-cv-06019

Opening Brief of Appellant Theodore H. Frank

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Adam E. Schulman
John M. Andren
1629 K Street, NW, Suite 300
Washington, D.C. 20006
(610) 457-0856

*Attorneys for Appellant Theodore H. Frank*

# Table of Contents

Table of Contents ................................................................................... i

Table of Authorities ............................................................................ iii

Statement of Subject Matter and Appellate Jurisdiction .................... 1

Statement of the Issues ......................................................................... 2

Statement of Related Cases and Proceedings ...................................... 4

Statement of the Case .......................................................................... 4

    A.    Plaintiffs sue over the exposure of Wawa customers' personal information ...................................................................... 4

    B.    Within nine months, and before any contested motion practice, the parties settle. ................................................... 5

    C.    Frank objects and the parties amend the settlement to create an unambiguous common fund instead of a segregated fee structure ........... 8

    D.    The district court values the settlement relief by the amount "made available" and grants the fee award in full. .................................. 11

    E.    This Court vacates the fee award, and remands for a "hard look" at the actual class benefit and the side agreements that insulated counsel's fee request ..................................................................... 12

    F.    On remand, the district court again values the settlement relief by the amount "made available" and grants the fee award in full. ............... 14

Summary of Argument ....................................................................... 18

Argument ............................................................................................ 19

I.    Because of the agency problem in class-action settlements, courts must safeguard class members from overreaching fee requests. .................................. 19

II.    The district court violated *Wawa I*'s mandate, and principles of judicial estoppel and forfeiture, when it concluded that the final settlement did not provide clear sailing and that the first three proposed settlements did not intend a fee reversion. ...................................................................... 30

    A.    The settlement contains clear sailing ........................................ 31

    B.    The first three proposed settlements intentionally segregated fees from class relief. ............................................................. 36

III.    The district court legally erred in awarding counsel a percentage of the gift cards and cash that class members will never receive. ................................... 40

Conclusion.................................................................................................. 45

Combined Certifications.............................................................................. 47

# Table of Authorities

<u>Cases</u>

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ................................................................... 30

*In re AT&T Corp. Secs. Litig.*,
   455 F.3d 160 (3d Cir. 2006) .................................................................... 21

*In re Baby Products Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) .............................................................8, 20, 27

*Bankers Tr. Co. v. Bethlehem Steel Corp.*,
   761 F.2d 943 (3d Cir. 1985) ..................................................................33-34

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................38-39

*BP Expl. & Prod. v. Claimant ID 100281817*,
   919 F.3d 284 (5th Cir. 2019) ................................................................... 30

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) .................................... 3, 8, 22, 26, 27, 29

*Brown v. Rita's Water Ice Franchise Co.*,
   242 F. Supp. 3d 356 (E.D. Pa. 2017) ...................................................... 23

*Budinich v. Becton Dickinson*,
   486 U.S. 196 (1988) .................................................................................. 1

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ......................................... 26

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .................................................................... 21

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ..............................................................2, 27, 44

*Commonwealth v. UPMC*,
   129 A.3d 441 (Pa. 2015) .......................................................................... 35

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ............................................................... 24

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................... 29

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) .............................................................................. 1-2

*Dewey v. Volkswagen, AG*,
    681 F.3d 170 (3d Cir. 2012) ................................................................. 8

*Drazen v. Pinto*,
    106 F.4th 1302 (11th Cir. 2024) ........................................................ 28

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ........................................ 20, 27, 38, 45

*Falcone v. Dickstein*,
    92 F.4th 193 (3d Cir. 2024) ........................................................ 34-35

*Fessler v. Porcelana Corona De Mexico*,
    23 F.4th 408 (5th Cir. 2022) .............................................................. 29

*Foman v. Davis*,
    371 U.S. 178 (1962) .......................................................................... 31

*Fujiwara v. Sushi Yasuda Ltd.*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ............................................... 24

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ........................................................ *passim*

*Golan v. Saada*,
    596 U.S. 666 (2022) .......................................................................... 31

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) ................................................. 8, 20, 31

*Harrity v. Continental-Equitable Title & Tr. Co.*,
    124 A. 493 (Pa. 1924) ....................................................................... 35

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
  59 F.4th 55 (3d Cir. 2023) ....................................... 30

*Johnson v. NPAS Sols., LLC*,
  975 F.3d 1244 (11th Cir. 2020) ............................. 21, 43

*Kay Co. v. Equitable Prod. Co.*,
  27 F.4th 252 (4th Cir. 2022) ................................... 30

*Klein v. Stahl GMBH & Co.*,
  185 F.3d 98 (3d Cir. 1999) ..................................... 30

*Koby v. ARS Nat'l Services, Inc.*,
  846 F.3d 1071 (9th Cir. 2017) ............................... 19, 44

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
  337 F.3d 314 (3d Cir. 2003) ................................... 32

*Laffitte v. Robert Half Int'l*,
  376 P.3d 672 (Cal. 2016) ....................................... 29

*Linneman v. Vita-mix Corp.*,
  970 F.3d 621 (6th Cir. 2020) ................................. 45

*Lony v. E.I. Dupont de Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989) ................................... 40

*Lowery v. Rhapsody Int'l Inc.*,
  75 F.4th 985 (9th Cir. 2023) ................................... 40

*Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*,
  2015 WL 5560541,
  2015 U.S. Dist. LEXIS 125869 (E.D.N.Y. Sept. 21, 2015) ............... 22

*In re Martin*,
  67 A.3d 1032 (D.C. 2013) ....................................... 25

*Merola v. Atlantic Richfield Co.*,
  515 F.2d 165 (3d Cir. 1975) ................................... 28

*Nationwide Ins. Co. v. GMC/Chevrolet Motor Div.*,
  625 A.2d 1172 (Pa. 1993) ....................................... 35

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ................................................................ 32

*In re NFL Players' Concussion Injury Litig.,*
    923 F.3d 96 (3d Cir. 2019) ...................................................... 30

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014).............................. 3, 8, 22, 25, 27, 40

*In re Pet Food Prods. Liab. Litig.,*
    629 F.3d 333 (3d Cir. 2010) .................................................... 24

*Piambino v. Bailey,*
    757 F.2d 1112 (11th Cir. 1985)................................................ 29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ........................................... 27, 44, 45

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ................................................... 39

*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002)................................................... 45

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) .................................................... 40

*Roes v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019)........................................ 25, 38, 39

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices &*
    *Prods. Liab. Litig.,*
    997 F.3d 1077 (10th Cir. 2021)..................................... 27, 40, 41

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................... 27

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.,*
    869 F.3d 551 (7th Cir. 2017).............................................. 44-45

*Swinton v. Squaretrade, Inc.,*
    454 F. Supp. 3d 848 (S.D. Iowa 2020)...................................... 28

*United States v. Dowdell,*
    70 F.4th 134 (3d Cir. 2023) ................................................................30-31

*United States v. Kennedy,*
    682 F.3d 244 (3d Cir. 2012) ................................................................ 30, 33

*Wallach v. Eaton Corp.,*
    837 F.3d 356 (3d Cir. 2023) ................................................................ 40

*In re Wawa, Inc. Data Sec. Litig.,*
    85 F.4th 712 (3d Cir. 2023) ("*Wawa I*") ..........................................*passim*

<u>Rules and Statutes</u>

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1332(d) .................................................................................. 1

28 U.S.C. § 1712 ...................................................................................... 28

Fed. R. Civ. P. 23 ...............................................................................*passim*

Fed. R. Civ. P. 23(e) ................................................................................ 10

Fed. R. Civ. P. 23(e)(2)(B) ...................................................................... 38, 39

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................... 38, 39

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................. 13, 27

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................ 27

Fed. R. Civ. P. 23(h) ............................................................................... 12, 19, 27-28

N.D. Cal Procedure Guidance for Class Action Settlements ..................23-24

<u>Other Authorities</u>

Agree,
    B<span>LACK</span>'<span>S</span> L<span>AW</span> D<span>ICTIONARY</span> (11th ed. 2019) ........................................................ 34

Agree,
 Merriam-Webster, (Aug. 29, 2024), https://www.merriam-
 webster.com/dictionary/agree. ................................................................. 34

Agreed,
 Black's Law Dictionary (6th ed. 1990) ........................................... 34

Becker, Edward R.,
 *Third Circuit Task Force Report on Selection of Class Counsel*,
 74 Temple L. Rev. 689 (3d Cir. 2001) ........................................ 24, 29

Becker, Edward R.,
 *Third Circuit Task Force Report on Selection of Class Counsel*,
 74 Temple L. Rev. 689 (3d Cir. 2001) ........................................ 24, 29

Eisenberg, Theodore, Geoffrey Miller & Roy Germano,
 *Attorneys' Fees in Class Actions: 2009-2013*,
 92 N.Y.U. L. Rev. 937 (2017) ...................................................... 23-24

Erichson, Howard,
 *Aggregation as Disempowerment*,
 92 Notre Dame L. Rev. 859 (2016).......................................... 23, 25, 39

Erichson, Howard,
 *How to Exaggerate the Size of Your Class Action Settlement*,
 Daily Journal (Nov. 8, 2017) ........................................................ 25

Frank, Ted.,
 *Settlement Insurance Shows Need for Court Skepticism in Class Actions*,
 CEI Open Market blog (Aug. 31, 2016) ........................................ 26

Gold, Russell,
 *"Clientless" Lawyers*,
 92 Wash. L. Rev. 87 (2017) .......................................................... 23

Gold, M. Russell,
 *Compensation's Role in Deterrence*,
 91 Notre Dame. L. Rev. 1997 (2016).......................................... 29

Isaacharoff, Samuel,
 *Class Action Conflicts*,
 30 U.C. Davis. L. Rev. 805 (1997) .............................................. 23

*Report on Contingent Fees in Class Action Litigation*,
    25 REV. LITIG. 459 (2006) .................................................................................... 29

Wolfman, Brian,
    *Judges! Stop Deferring to Class Action Lawyers*,
    2 U. MICH J. L. REFORM. 80 (2013) ........................................................................ 23

**Statement of Subject Matter and Appellate Jurisdiction**

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(d) because Plaintiffs' consolidated class-action complaint alleges claims exceeding $5,000,000 exclusive of interest and costs, the proposed class has over 100 members, and defendant Wawa, Inc. is a citizen of a state different from that of at least one class member. JA267.[1] For example, named plaintiff Amanda Garthwaite is a Virginia citizen, while Wawa is a New Jersey corporation with Pennsylvania its principal place of business. JA263, 266.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The lower court issued its final decision overruling class member Theodore H. Frank's objection and granting settlement approval and attorneys' fees in April 2022. JA1170, 1197. Frank timely appealed, and this Court vacated the fee order. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 727 (3d Cir. 2023) (*"Wawa I"*). On remand, Frank renewed his objection. JA1251, 1304. The district court overruled that objection and reinstituted the same fee award in an April 9, 2024 opinion and April 9, 2024 order. JA1, 53. This decision on fees is a collateral final decision independent of the final judgment. *Budinich v. Becton Dickinson*, 486 U.S. 196, 200 (1988). Frank timely appealed this order on May 8, 2024. JA55.

Frank, as an objecting class member below, has standing to appeal a fee award attendant to settlement approval without the need to intervene formally. *Devlin v.*

---

[1] "JA" refers to the Joint Appendix, and "Dkt." to the docket below, No. 19-cv-06019 (E.D. Pa.).

*Scardelletti*, 536 U.S. 1 (2002); *Wawa I*; *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727-31 (3d Cir. 2001).

## Statement of the Issues

1.    *Wawa I* vacated the fee award and remanded for the district court to consider the class benefit and scrutinize "the *presence* of side agreements." 85 F.4th at 727 (emphasis added). One such side agreement was the clear-sailing clause "where Wawa promised as part of the settlement not to challenge class counsel's request for an agreed-upon attorney's fee award." *Id.* at 725. Until remand proceedings, all parties consistently acknowledged that class counsel's fee was agreed upon under the settlement. And the district court did too, originally finding that an independent mediator justified the presence of the clear-sailing clause. *Id.* at 726; *accord* JA1188. On remand, the district court interpreted Wawa's settlement obligation to "cooperate with class counsel" in preparation of their fee petition, JA1032, as something other than a clear-sailing clause. In so doing, did the district court commit reversible error by misinterpreting the settlement agreement, violating the law-of-the-case doctrine and the mandate rule, and contravening principles of judicial estoppel and forfeiture? (Raised at JA1326-27, 1402-07; Ruled on at JA12-20.)

2.    Similarly, *Wawa I* remanded for the district court to consider the relevance of the fee reversion "contained" in the "original settlement agreement" but "eventually removed in the Third Amended Settlement." 85 F.4th at 726. Again, despite the parties' numerous contrary representations before and during the *Wawa I* appeal, the district court concluded that the fee reversion was merely an accident of omission: "the parties

made no such agreement." JA22. Did the district court violate the *Wawa I* mandate, contravene principles of judicial estoppel and forfeiture, and commit reversible error by finding that the settling parties never intended the fee reversion in the initial agreement? (Raised at JA1250, 1304, 1408-12; Ruled on at JA20-29.)

3. *Wawa I* holds that when awarding fees for obtaining a reversionary settlement, "courts must place greater weight on the claims rate," especially when "class members must do more than raise their hands to get their payment" and when the settlement "offer[s] discounts and tickets while others—like counsel—get cash." *Id.* at 723. Other appellate courts, particularly since the 2018 Amendments to Rule 23, categorically disallow consideration of hypothetical sums that are not paid out to the class. *E.g.*, *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) (cited by *Wawa I*, 85 F.4th at 726); *Pearson v. NBTY, Inc.*, 772 F.3d 778, (7th Cir. 2014) (cited by *Wawa I*, 85 F.4th at 723, 725-26). On remand, the district court again valued the settlement based on the amounts made available rather than the amounts obtained, because the settlement obligated Wawa to continue data security protocols that it had already implemented. JA29-40. Did the district court commit reversible error in awarding attorneys' fees based on this valuation when, among other things, (A) nearly all of the class will receive no compensation; (B) almost all of the available and distributed compensation comes in the form of gift cards—not cash; (C) class counsel insulated their fees with clear-sailing clause and fee reversion structures; and (D) the settlement's injunctive relief merely codifies the status quo? (Raised at JA1244-46, 47-49; 1321-26; 1400-01; Ruled on at JA29-40.)

## Statement of Related Cases and Proceedings

No related case is pending. Case Nos. 22-1743 and 22-1950 were earlier appeals arising out of the final approval order and first fee order. The 22-1743 appellants voluntarily dismissed their appeal, while Frank successfully pursued 22-1950, resulting in *Wawa I*.

## Statement of the Case

This is a class member's appeal of a $3.2 million attorneys' fee award in a class-action settlement where less than 3% of the class will receive a total of $80,000 in cash and $2.8 million in gift cards. Class member and appellant Theodore Frank first objected to the initial settlement below. The parties agreed to modify the settlement to address Frank's objection to settlement approval, while leaving open Frank's objection to the disproportionate fee request. After the district court granted the fee request in full, Frank appealed, and this Court vacated the award with instructions to reconsider certain factors. *Wawa I*, 85 F.4th at 719, 725, 727. On remand, the district court reinstated its earlier fee award, and Frank appeals again.

## A. Plaintiffs sue over the exposure of Wawa customers' personal information.

For most of 2019, hackers compromised Wawa's payment systems, exposing the payment card information of about 22 million Wawa customers nationwide. JA241. Just after Wawa publicly notified customers of the data breach in December 2019, several plaintiffs sued on a variety of state-law claims. *E.g.*, Dkt. 1. Soon, the district court consolidated several cases in Docket No. 19-cv-6019. Dkt. 9. Counsel wrangled for appointment, resulting in orders setting three tracks for the consolidation litigation—a

financial institution track, an employee track, and a consumer track—and appointing four firms as Interim Co-Lead Class Counsel (together "class counsel") for the consumer plaintiff class. Dkts. 119, 120. In their ultimately successful joint application to be appointed counsel for the consumer track plaintiffs, class counsel proclaimed that they had "learned from experience in data breach cases the importance of using a simple claim form and claims process to maximize class members' participation in any settlement." Dkt. 78 at 25. They promised that they would "requir[e] minimal effort or documentation to submit a claim." Dkt. 78 at 25.

Shortly after appointment, the consumer plaintiffs filed their Consolidated Class Action Complaint. JA236.

## B. Within nine months, and before any contested motion practice, the parties settle.

Plaintiffs and Wawa reached a settlement in principle in September 2020, memorializing and submitting it for preliminary approval in early 2021. JA2; Dkt. 179. Under that initial proposal (JA357), the court would certify a class of "All residents of the United States who used a credit or debit card at a Wawa location at any time during…March 4, 2019 through December 12, 2019." JA364. Wawa estimated that there are 22 million class members. JA348.

The proposed settlement—which was ultimately substantially modified in response to Frank's objections—originally provided three tiers of relief to class members who submitted a valid claim:

- Tier 1 claimants (those who could submit documentary proof of a transaction at Wawa during 2019 and could attest under penalty of perjury

that they spent some amount of time monitoring their accounts) could file a claim for a $5 Wawa Gift Card. JA367. Tier 1 claims were subject to a $6 million cap and a $1 million floor, such that the gift card's value would be augmented or reduced if fewer than 200,000 or more than 1.2 million class members filed a Tier 1 claim. JA367.

- Tier 2 claimants (those who could submit the same documentary proof and attestation as Tier 1 claimants, and could also submit proof of an actual or attempted fraudulent transaction on the same card) could file a claim for a $15 Wawa Gift Card. JA367. Tier 2 claims were subject to a $2 million cap and no floor. JA367.

- Tier 3 claimants (those who could submit the same proof as Tier 1 and 2 claimants, but could also submit proof that they incurred out-of-pocket expenses that were not reimbursed) could file a claim for a cash reimbursement of up to $500. JA368. Tier 3 claims were subject to a $1 million cap and no floor. JA368.

The Wawa Gift Cards are "e-gift cards," fully transferable and can be used for any item sold in stores besides cigarettes or other tobacco/nicotine delivery products. JA365. At first, they were subject to an expiration date, but after Frank's objection, Wawa agreed that they would not expire. JA988, 992.

Class members who failed to submit a claim or opt out would receive no compensation and the settlement's general release would waive their claims. JA385. In the settlement, Wawa agreed to "injunctive relief" acknowledging that providing benefits to its customers shaped Wawa's previous decision to strengthen its data

security systems; that Wawa's Board had authorized $25 million to improve data security; and that for two years Wawa agreed to retain an assessor to conduct an annual security audit, comply with standard encryption security procedures at the point of sale, and maintain written information security policies. JA369-70. The parties agreed to value this injunctive relief as at least $35 million. JA369.

Class counsel negotiated for themselves the right to seek $3,200,000 in attorney's fees and costs, with the "cooperat[ion]" of Wawa. JA379. In the original settlement, if the district court awarded less than that amount, any excess sums would remain with Wawa. JA379. Wawa would pay class counsel in cash, rather than gift cards.

To address employee-track plaintiffs' opposition (Dkt. 188), the parties amended the settlement to clarify that employees were not sacrificing claims related to data submitted in an employment capacity. Dkt. 201 at 2.

The district court preliminarily approved the settlement and authorized notice. JA680. Notice was provided only through publication in Wawa stores and the settlement website, and not to any individual class members. JA690-91, 693-94.

Class counsel requested $3.2 million in combined fees and expenses ($3,040,060 as attorneys' fees), uncontested by Wawa. Dkt. 257. Class counsel argued that the court should award fees on a lodestar basis but submitted no delineation of their proclaimed 5942 billable hours beyond aggregate hours by firm, biller, and rate. Dkt. 258 at 14-24.

Second, they argued that the fee request could pass a percentage-of-recovery crosscheck, because the $3 million fee was 24.9% of the $12.2 million "overall value of the Settlement" summing the $3.2 million fee and expense fund with the $9 million (in mostly gift cards) made available. Dkt. 258 at 10. Class counsel "conservatively

exclude[d]" the injunctive relief from the denominator. Dkt. 258 at 12, 33. Class counsel was adamant that the settlement value should be measured by the total amount of gift cards made available, not by the value of the gift cards that were claimed, much less the value of the gift cards that are eventually redeemed. Dkt. 258 at 27-31.

## C. Frank objects and the parties amend the settlement to create an unambiguous common fund instead of a segregated fee structure.

Frank timely objected to the settlement approval and fee request on November 10, 2021. JA877. Frank documented his class membership and submitted a claim for a gift card. JA915.

Frank founded the Center for Class Action Fairness, now part of the nonprofit Hamilton Lincoln Law Institute. JA915-16. CCAF's settlement objections have won hundreds of millions of dollars for class members and shareholders and several landmark appellate decisions protecting class members' rights. JA917-18. Frank has argued some of the leading decisions on the proper valuation of claims-made settlements, including *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); and *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013). While CCAF has lost some of the dozens of objections it has brought in the last fifteen years, it has won most of its federal appeals, including all four it has prosecuted in the Third Circuit. *Wawa I*, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *Baby Products*; *Dewey v. Volkswagen, AG*, 681 F.3d 170 (3d Cir. 2012).

Frank objected that the settlement unfairly served class counsel's interests at the expense of the class. JA888-903. Class counsel had negotiated for itself the right to seek

unopposed fees that Frank predicted would significantly outstrip what the class would receive: the structure of the claims-made settlement meant that class claims would be a fraction of the hypothetical $9 million amount made available. JA892, 893, 894, 896-97, 899-901. And class counsel had segregated its fee fund so that only Wawa—the party that had agreed not to oppose the fee request—and not the class, would benefit from any excess in the fee request. JA901-903. Frank maintained that it would be legal error to value the settlement by the funds "made available" especially because the bulk of relief is "coupon-adjacent" gift cards. JA889-91. The so-called injunctive relief could not remedy the disproportion because that was simply a sum of money that Wawa's Board allocated voluntarily after the data breach irrespective of the settlement. JA898.

Independently. because of the settlement structure using a floor only for Tier 1 claims, Frank expected the irrational result that Tier 2 claimants would actually recover less value than less-injured Tier 1 claimants. JA903-04.

Frank further objected alternatively that if the court granted settlement approval, it should limit the fee to 25% of the true constructive common fund. JA904-10. Class counsel did not provide billing records with sufficient detail to allow the court to use a lodestar methodology. JA905-07. In any case, percentage-based awards better align the interest of class with class counsel, but only if tethered to the actual claims rate, not a fictitious 100% claims rate. JA907-08. Finally, the available lodestar information confirmed that class counsel's $3 million request was excessive. JA908-10.

Two days after Frank objected, the parties submitted a second settlement amendment. JA930. This amendment fundamentally altered the settlement structure to automatically include Wawa mobile app users before December 12, 2019 as Tier 1 $5-

gift card claimants even if they did not submit a claim. The amendment suggested that Frank had correctly anticipated the minuscule claims rate, and the claims administrator's later declarations confirmed this. Only 6,744 class members had filed a Tier 1 claim for a total gift card face value of $33,720 (under the original agreement, these claims would have been augmented 30-fold to $1 million); only 683 class members filed a Tier 2 claim for a total gift card face value of $10,245; and only 254 filed a Tier 3 claim for a total cash value of $79,829.71. JA981-82, 1167. Adding the more than 550,000 identifiable mobile app users (JA1167) into the $5 gift card Tier 1 pool resolved Frank's objection about intraclass allocation. Although a stark improvement over the $1.1 million of the original settlement, the $2.9 million was still less than class counsel's $3.2 million clear-sailing award, and Frank maintained his objection to the disproportion.

Frank negotiated with Wawa to unwind the segregated fee fund, so that any reduction in excess fees would augment class relief, resulting in the parties' Third Amended Settlement Agreement. JA1317-19, 1008. This amendment eliminated the fee segregation: any reduction in class counsel $3.2 million request could now increase the value of the settlement's gift cards *pro rata*. JA1031-32. Frank argued that the amendment empowered the district court to bring the settlement in compliance with Rule 23(e) simply by awarding a reasonable fee and rebalancing the funds. JA996-97.

With the elimination of the fee segregation and Wawa's confirmation that the gift cards would not expire, Frank agreed to withdraw his settlement approval objection, maintaining his fee objection. JA993. A $3.2 million Rule 23(h) award for class counsel remained unreasonable, because it would constitute over 50% of the constructive common fund: the class had been so indifferent to the settlement that it required four

attempts and Frank's involvement to eliminate the settlement's deficiencies. JA998, 1140-41.

Of the 22,000,000-person class, under 8,000 class members (0.035%—3 hundredths of one percent) submitted claims to participate in the settlement. JA1177-78. Nearly all the relief to class members consists of the automatic distribution of $5 gift cards to mobile app users. 97% of the class will get no compensatory relief, but will release their claims against Wawa.

## D. The district court values the settlement relief by the amount "made available" and grants the fee award in full.

After a fairness hearing (JA1048), the district court approved the settlement and granted class counsel's full request for $3.2 million fees and expenses. JA1170.

The district court awarded fees on a percentage basis. JA1184-91. But the Court did not calculate the fee as a percentage of the gift cards redeemed, claimed, or even distributed to class members; it calculated the fees based on a $12.2 million denominator—what it called the "entire constructive common fund." JA1187-88. This $12.2 million consisted of both the negotiated $3.2 million attorneys' sum, and the $9 million in "caps" under the tier awards ($6m in Tier 1 gift cards; $2m in Tier 2 gift cards; and $1m in Tier 3 cash payments). Under that approach, the court viewed the $3m fee request as a reasonable 24.9% of the entire constructive common fund. JA1188. (In a footnote, the court agreed that the injunctive relief weighed toward approval, but did not include it in calculating the constructive common fund. JA1186 n.4.) The district court neither mentioned nor addressed the contrary authority

Frank cited, either before or after the 2018 Amendments to Rule 23. It suggested instead that Circuit precedent supported its methodology. JA1187.

Frank timely appealed. Dkt. 321.

**E.  This Court vacates the fee award, and remands for a "hard look" at the actual class benefit and the side agreements that insulated counsel's fee request.**

On appeal, Frank contended that the district court erred by crediting class counsel with hypothetical amounts that the parties never expected Wawa to pay. This was especially problematic because, among other things, the class would obtain virtually no cash under the settlement; and class counsel had negotiated for a disproportionate cash fee segregated from class recovery and insulated from Wawa's opposition by a clear-sailing clause. A coalition of attorneys general from eleven states filed an amicus brief supporting Frank and emphasizing the coupon nature of the gift card relief.

After argument, this Court vacated the fee award, sustaining Frank's objection as "correct." *Wawa I,* 85 F.4th at 719. Although setting a reasonable fee "involves discretion, Rule 23(h) is not without detailed demands." *Id.* at 723. The district court "erred" when it "1) considered only the funds made available to class members rather than the amount actually claimed during the claims process; and 2) inadequately scrutinized any side agreements between class counsel and Wawa." *Id.* at 719. The amendments to the settlement were "not enough to ensure that class counsel receives only a reasonable fee." *Id.* at 715.

*Wawa I* emphasizes "two considerations that loom large…: the ratio between the fee award and amount recovered by the class members, and side agreements between

class counsel and the defendant." *Id.* at 715. When "defendants keep any unclaimed funds, making their liabilities contingent upon the presentation of individual claims, courts must place greater weight on the claims rate." *Id.* at 723 (internal quotation omitted). "[W]hen class members must do more than raise their hands to get their payment, the claims rate offers valuable insight into the 'effectiveness' of 'the method of processing class member claims.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)). The decision notes the distinction between claiming cash and claiming gift cards. "Courts should take special notice when class members are offered discounts and tickets while others—like counsel—get cash." *Id.* This Court concluded that the district court felt itself bound to only consider the funds made available rather than the settlement value actually claimed, even though there was no such requirement in "history or precedent." *Id.* at 725 & n.3 (quoting JA1185, 1187, 1188). Remarking that the result of the distribution process is "a sensible startling line to begin the fee analysis," *Wawa I* remanded for consideration of the benefit the settlement conferred on the class. *Id.* at 725

Additionally, courts "must be on the lookout for clear sailing clauses" and "fee reversions." *Id.* at 725. These are among the "subtle signs that class counsel have allowed pursuit of their own self-interests" to override their duty to absent class members. *Id.* at 719 n.8 (internal quotation omitted). This Court turned its attention to the "never-deleted clear sailing clause" "where Wawa promised as part of the settlement not to challenge class counsel's request for an agreed-upon attorney's fee award." *Id.* at 717, 725. That clear-sailing results from fee negotiations overseen by a mediator and occurring after the parties had reached agreement on class relief "is alone insufficient."

*Id.* at 726. It does not guarantee that the "end product" is a fairly allocated settlement. *Id.* (internal quotation omitted).

Lastly, *Wawa I* turned to the other "side agreement"— the fee reversion present in the initial settlement and later removed by the Third Amendment. *Id.* at 726-27. Finding the reversion "bewildering," it pondered "why would class counsel agree to give part of the common fund they secured to the defendant instead of their clients?" *Id.* It concluded that the fee reversion is a "gimmick for defeating objectors," insulating class counsel's fee request especially when "combined with a clear sailing clause." *Id.* The removal of the fee reversion was "a welcome change, but not as welcome as if the fee reversion had never existed." *Id.* at 727. Ultimately, the amendments to the settlement were "not enough to ensure that class counsel receives only a reasonable fee." *Id.* at 715. This Court vacated and remanded for the "hard look" that Rule 23(h) requires. *Id.* at 719.

**F.     On remand, the district court again values the settlement relief by the amount "made available" and grants the fee award in full.**

On remand, the district court held a hearing. Dkt. 415. It singled out objector Frank and ordered him (but not the named plaintiffs or any officer of Wawa) to personally attend. Dkt. 415, JA1206. At the hearing, the district court began by asking Frank's counsel whether class counsel and defense counsel were "standing too far apart or too close together" (JA1208); likened the process to a "confessional" (JA1209, 1218, 1221); facetiously contemplated assigning each counsel "a different century to research" (JA1223, 1242); suggested that the alternative to clear sailing is "to force acrimony" and abandon a "civilized judicial system" (JA1239; *accord*

JA1226, 1227); refused to hear from Frank himself (JA1214); and repeatedly declined further briefing (JA1212, 1214, 1216, 1238).

At the hearing, class counsel argued—for the first time—that the settlement does not contain a clear-sailing clause, nor did it (even before the Third Amendment) contain any intentional fee reversion. JA1217, 1221, 1224, 1225-26, 1227. Coming out of the hearing, the district court requested further factual submissions, to include at least the issues of injunctive relief and "a computation of the time value of money" "lost as a result this process." JA1255-56.

Frank's counsel, class counsel, and Wawa's counsel all submitted supplemental declarations. JA1271, 1301, 1304. Frank's recounted the remedial measures Wawa had taken after the data breach, and reiterated that the settlement did not obligate Wawa to do anything different. JA1306-07, 1309, 1314-15; *accord* JA1392. It recounted the procedural posture of the litigation, the settlement, his negotiation with Wawa's counsel, the Amendments, and the appeal. JA1308-26. It objected that class counsel's newly advanced argument (against the existence of clear sailing and the former fee reversion) contradicted counsel's previous statements, the district court's final approval order, and *Wawa I*, and was forfeited anyway. JA1326-27.

Frank cataloged the case-specific factors that supported basing fees on the actual recovery: (1) 97% of the class will receive nothing but will lose their right to sue, (2) more than 97% of the value provided under the settlement comes in the form of coupon-adjacent gift cards, (3) the $5 and $15 gift card caps were a matter of negotiation, not the operation of law, (4) the minimal participation rate was expected, especially given the lack of any direct notice to class members, (5) at the time of

appointment class counsel acknowledged the need to simplify the claims process and promised only "minimal effort or documentation" would be required, and (6) class counsel insulated their fees with clear sailing and fee reversion structures. JA1322.

The district court held a second hearing to "provide a belt and suspenders operation." JA1398. At that hearing, Frank maintained that *Wawa I* favored looking to amounts claimed, not those "made available." JA1400-01. He reasserted that the approved settlement contains a clear-sailing clause and the initial settlement contained an intentional fee reversion. JA1403-07, 1408-09, 1436. The district court expressed displeasure that Frank seemed to be asking for an "objective inflexible standard" that would require lawyers to "be obdurate," "squabble more than they already do," and "have a fully blossomed settlement agreement on one draft." JA1404-05, 1413, 1415. Class counsel insisted that there was no clear sailing or intentional fee reversion. JA1415-18. Wawa's counsel supported class counsel, and argued for granting the full $3.2m Rule 23(h) award. JA1419-29.

Afterward, the district court again awarded the full $3.2m sought by class counsel. JA53. This time, rather than justify the clear-sailing clause by reference to arms' length mediation, it determined that the settlement did not contain any clear-sailing agreement at all. JA12-20. According to the court, Wawa's agreement to "cooperate" in preparation of the fee petition does not mean it waived its right to object. While acknowledging that class counsel had made at least one representation that the fee was "agreed to by the parties," it found that this did not denote an agreement not to oppose. JA16. Wawa's defense of class counsel's fee request did not evidence clear sailing. JA17-18. Nor did law of the case require such a finding, under its final approval order or this

Court's *Wawa I* decision. JA19-20. It did not mention Frank's objection that the settling parties had forfeited their denial of clear sailing, nor any of the other occasions that the parties had acknowledged the existence of clear sailing.

So too for the initial's settlement's fee reversion. The opinion concludes that "the parties made no such agreement." JA22. Despite class counsel's repeated references to the fee segregation as a reason to approve its fee motion, the opinion finds that the segregated fee structure was simply "an unintended" "omission." JA23. It determines that class counsel and Wawa's counsel had not colluded—an argument and term that Frank has consistently disclaimed—but does not address Frank's true objection that the initial fee reversion was born of class counsel's self-interest in insulating their fee from scrutiny. JA27-28.

As the district court had done before, it then valued the settlement based on the gift card face value made available, rather than the relief actually delivered to class members. JA29-40. The opinion reasons that the settlement gift cards "closely approximate cash." JA31. Then, while acknowledging that the injunctive relief only codifies Wawa's preexisting practices, it nevertheless finds the relief "central" because Wawa would not otherwise have agreed to be bound by a court order. JA2, 32-33. Beyond the purported value of the injunctive relief, it also looks to the practicalities of data breach litigation that "mitigate[] the Third Circuit's concern that a low claims rate" reflects an ineffective settlement. JA39, 42. Having already concluded that clear sailing and fee reversion never existed, the court does not incorporate those features into its analysis.

The opinion then revisits the *Gunter* factors and reinstitutes much of the final approval opinion. *Compare* JA40-49 *with* JA1185-93. It concludes that the settlement amendment, objection, and appeal process did not reflect negatively on the skill and efficiency of class counsel. JA43-44. It observes that the appeal and remand process had reduced the value of counsel's fee by "$408,492" while class counsel "also expended more hours to litigate." JA46 n.13. It does not mention that class counsel brought those expenses on itself by inducing the district court to commit reversible error.

Frank timely appealed. JA55.

## Summary of Argument

*Wawa I* instructed the district court to give a "hard look" to class counsel's fee award given the minimal actual benefit conferred and the "presence of side agreements" that insulate the fee request. 85 F.4th at 719, 724, 727. Unfortunately, on remand, class counsel insisted for the first time that those side agreements never existed, and the district court agreed instead of giving the hard look *Wawa I* demanded. JA12-29. That revisionism flouts the *Wawa I* mandate, the record, the settlement's plain language, and the settling parties' representations throughout the litigation.

This revisionist error infected the court's subsequent analysis on whether to award fees based on value recovered or value made available. Having disappeared the clear sailing and kicker "red flags" (85 F.4th at 719), the district court again looked to the sums "made available." JA29-40. The district committed a second legal error when it relied on the settlement's injunctive relief to rationalize its "made available" methodology. It ignored the economic reality that an injunction obligating Wawa to

continue doing what it was already doing, and has no plans to stop doing, has "no real value." *Koby v. ARS Nat'l. Services, Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017).

In Section I, we discuss the background problem of conflicts between class counsel and the class in class-action settlements, and why court scrutiny is important.

In Section II, we discuss the district court's disregard of the *Wawa I* mandate and its reversible error in asserting there was no clear-sailing and no problem with the red flag of a segregated fee structure.

The district court's reasoning for nevertheless awarding fees based on a purely fictional hypothetical maximum recovery to the class is erroneous under *Wawa I*, and should be erroneous as a matter of law. *See* Section III below.

This Court should vacate and remand for a district court to apply the original *Wawa I* mandate.

## Argument

## I. Because of the agency problem in class-action settlements, courts must safeguard class members from overreaching fee requests.

Frank's argument against the fee award and the district court's methodology does not come in a vacuum. It is based not just on text and precedent, but on the need for courts to police abuses in class-action settlements. This understanding motivated *Wawa I*'s remand: Rule 23(h) imposes "detailed demands," and requires "searching scrutiny" to protect the rights of individual class members who have not authorized class counsel to litigate their claims. 85 F.4th at 719 n.8, 723. The settling parties have drawn 22 million Wawa consumers into a settlement that will release their claims, and

most of those consumers will receive no new consideration for that release. The context for *why* the district court's decision is wrong as a matter of public policy is important.

Unlike most settlements in bilateral civil litigation, class-action settlements require court approval under Rule 23's standards. "The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of the unnamed class members who by definition are not present during the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"). "Because class actions are rife with potential conflicts of interest between class counsel and class members,…judges…are expected to give careful scrutiny to the terms of proposed settlements…to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Baby Products*, 708 F.3d at 175 (quotation omitted); *accord In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*, 55 F.3d 768, 785 (3d Cir. 1995) (observing "overarching" principal-agent problem). Thus, courts themselves assume a derivative "fiduciary" role protecting absent class members. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).

The district court misconceived this precept of class litigation, noting on remand that "[t]his case is no more special than a rear-end collision." JA1243; *see also* JA1407-08. But the special circumstances of class litigation, enshrined in the *procedure* of Rule 23, demand that courts adopt a different posture when overseeing actions that implicate

the rights of thousands or millions of non-consenting individuals.[2] In rear-end collisions involving competent adult parties, presiding courts have no duty to "ensure" adequate representation of the litigants; in class actions they do. *Wawa I*, 85 F.4th at 718 n.6.

The counsel/class conflict becomes most pronounced at the terminal settlement stage of the litigation, when class counsel petitions for a fee award from the common fund. "[C]ounsel's understandable interest in getting paid…comes into conflict with the class' interest in securing the largest possible recovery for its members." *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252-53 (11th Cir. 2020) (internal quotation omitted). "[R]egardless how a total settlement package is formally structured," "every additional dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001). Because the dynamics of the process conspire against the class's interests, "a thorough judicial review of fee applications is required in all class action settlements." *GM Trucks*, 55 F.3d at 819.

But this review poses a problem for district courts because "the adversarial process is diluted or entirely suspended during fee proceedings, and fee requests often go unchallenged." *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 168 (3d Cir. 2006) (internal quotation omitted). "[A] defendant is interested only in disposing of the total claim asserted against it; the allocation between the class payment and the attorneys'

---

[2] It is, of course, commendable that the district court committed to treat all cases with equal justice, no matter the substance. But the Constitution, Rule 23, and public policy all require the "close and careful review" of class action settlements to protect those not at the settlement table. *Wawa I*, 85 F.4th at 726.

fees is of little or no interest to the defense." *Wawa I*, 85 F.4th at 716 n.2 (simplified). Meanwhile, although the class members have a direct financial stake in common fund fee requests, the size of each class member's stake provides "an insufficient incentive to contest" an overreaching fee request "because the cost of contesting exceeds the objector's pro rata benefit." *GM Trucks*, 55 F.3d at 812 (internal quotation omitted).

Or, as initially occurred here, the parties might structure their all-inclusive settlement as a constructive common fund, rather than as a pure common fund. In a constructive-common-fund settlement, the parties provide for class relief, and then also establish an "artificially separate fee" fund. *GM Trucks*, 55 F.3d at 768; *see generally Briseño*, 998 F.3d at 1026-27 (explaining the flaws with such a structure). In a constructive-common-fund settlement, any excess fees revert to the defendant, thus severing the class's direct financial stake in the request and enabling class counsel to tell the court that their fees "will in no way reduce the recovery to any of the settlement class members." *GM Trucks*, 55 F.3d at 819. In economic reality, a segregated fee fund is merely a "gimmick for defeating objectors" and insulating counsel's fee request from scrutiny. *Wawa I*, 85 F.4th at 726 (quoting *Pearson*, 772 F.3d at 786). One might think then that defendants would have the proper economic incentive to contest overzealous constructive-common-fund fee awards. But no, the euphemistically named "clear-sailing clause" steps in. It precludes a settling defendant from opposing class counsel's fee request. *Id.* at 725-26; *Briseño*, 998 F.3d at 1026-27.

Given this background, courts operating on their own (or, occasionally, aided by public-minded objectors) must actively engage in the "singularly important" function of measuring and calibrating fee awards. Notes of Advisory Committee on 2003

Amendments to Rule 23. They must overcome the "natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter." *Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 WL 5560541, 2015 U.S. Dist. LEXIS 125869, *2 (E.D.N.Y. Sept. 21, 2015); *Brown v. Rita's Water Ice Franchise Co.*, 242 F. Supp. 3d 356, 357 (E.D. Pa. 2017) (noting, and resisting, "the temptation").

Federal courts, however, are endlessly busy; district judges are "conditioned in non-class contexts to view negotiated resolutions of disputes as preferable to litigated ones." Russell Gold, *"Clientless" Lawyers*, 92 WASH. L. REV. 87, 116 (2017). They are "unaccustomed to inquisitorial judging." Howard Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. 859, 869 (2016). "They are overworked, they have limited access to quality information, and they have an overwhelming incentive to clear their dockets." Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. DAVIS. L. REV. 805, 829 (1997). So, unfortunately, they often defer to class counsel rather than exercise a zealous degree of oversight. Brian Wolfman, *Judges! Stop Deferring to Class Action Lawyers*, 2 U. MICH. J. L. REFORM 80, 82 (2013).

Empirically, courts grant class action settlement fee requests in full 78% of the time. Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 953 (2017). For comparison, District of New Jersey courts granted more than 94% of fee requests in full; Northern District of California courts granted only 57% of requests in full. *Id.* at 956. *See also* N.D. Cal. Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-

settlements/ (standardizing scrutiny). Whatever the reason for this variance, the fact remains that "[b]y submitting proposed orders masquerading as judicial opinions, and then citing to them in fee applications, the class action bar is in fact creating its own caselaw on the fees it is entitled to." *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). And the problem creates a one-way ratchet: "On average, fees were 27% of gross recovery during the 2009-2013 period, which is higher than the average fee percentage of 23% [during] the 1993-2008 period." *Eisenberg, et al.*, 92 N.Y.U. L. REV. at 947.

Still, even the most deferential courts would raise an eyebrow if class counsel approached them with an undisguised $6.2-million-dollar common fund and proposed to appropriate $3.2 million (52%) for themselves. Because that is so far beyond the "twenty-five percent benchmark" that courts often use "as a beginning point for determining whether a particular fee is reasonable,"[3] such a request would be facially unreasonable under Rule 23. *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee award would be "clearly excessive"). Indeed, "[a]pplication of the factors listed in *Gunter* [*v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)] has led to fee awards in many cases below what some have argued to be a 'benchmark' of 25%." Chief Judge Edward R. Becker, *Third Circuit Task Force Report on Selection of Class Counsel*, 74 TEMP. L. REV. 689, 778 (3d Cir. 2001). A fee of greater than half the fund breaches not only bounds of Rule 23 reasonableness, but the more distant bounds of

---

[3] *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J., concurring and dissenting).

professional conduct. *See In re Martin,* 67 A.3d 1032, 1041-42 (D.C. 2013) (collecting cases on ethical restrictions on excessive contingency fees).

With no path to an exorbitant fee as a direct share of a common fund, settling parties often obscure the relative allocations between lawyers and class members by artificially inflating the settlement's apparent value. The illusion of a large settlement benefits both class counsel and a defendant: "The more valuable the settlement appears to the judge, the more likely the judge will approve it. And the bigger the settlement, the bigger the fee for class counsel." Howard M. Erichson, *How to Exaggerate the Size of Your Class Action Settlement*, DAILY JOURNAL (Nov. 8, 2017). Without judicial oversight, class members are left with disproportionate settlements in which class counsel recovers far more than their proportional 25% share. *See Erichson, Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. at 874-93 (discussing five common mechanisms to inflate settlement valuations: (1) spurious injunctive relief; (2) coupons; (3) *cy pres*; (4) onerous claims procedures; and (5) reversions and claims-made settlements) (cited by *Wawa I,* 85 F.4th at 719 n.8). Except for *cy pres*, each of these ailments afflicted the settlement process here.

A "claims-made" structure is among the most common tools used to conjure the mirage of value. In claims-made settlements, rather than make direct payment to class members, a defendant agrees to make a specified amount of money available to the class, in theory at least, but only pay out on the claims that class members file. *See Pearson,* 772 F.3d at 782-83 (describing perverse incentives created by a claims-made settlement); *Roes v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1058-59 (9th Cir. 2019) (same).

Settling parties expect that the amount the defendant will pay will be nowhere near the amount "made available" because "notoriously low" claims rates are endemic to class actions, particularly without any direct notice to the class. *Briseño*, 998 F.3d at 1026 & n.3; *see also, e.g., In re Carrier iQ, Inc. Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice). Settling parties can fine-tune claims procedures to adjust claims rates with near-actuarial certainty; indeed, a defendant can buy "settlement insurance" precisely because claims rates are so predictable. Ted Frank, *Settlement Insurance Shows Need for Court Skepticism in Class Actions*, CEI OPEN MARKET blog (Aug. 31, 2016). In this case, given the documentation required to file any claim (even a Tier 1 claim for a $5 gift card) and the lack of direct notice, Frank expected that the claims rate would fall well below one percent. JA895-96. Under a claims-made structure, class members recover—and a defendant pays—much less than when a defendant establishes a non-reversionary common fund. Simultaneously, class counsel can boast about the amount purportedly "made available" and seek to justify a large fee award, even though class members will receive a small fraction of that amount.

The "sensible" way to ameliorate this problem is to motivate counsel to seek out absent members by tying fees to the amounts the class *actually* receives. *Wawa* I, 85 F.4th at 725. If class counsel can maintain the illusion than an amount "made available" justifies their fee award, and defendants can buy peace at a fraction of that amount, class counsel has every incentive to ensure that their putative clients will neither make claims nor receive cash. This Court and several others have long interpreted Rule 23 to

look at "economic reality" rather than abstract fiction. *GM Trucks*, 55 F.3d at 821-22; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334, 338, 342 (3d Cir. 1998); *In re Cendant Corp Prides Litig.*, 243 F.3d 722, 741 n.25 (3d Cir. 2001); *Baby Products*, 708 F.3d at 179 n.13; *Pearson*, 772 F.3d at 781-82; *Pampers*, 724 F.3d at 721.

Rule 23 now expressly requires courts to see through that illusion; it requires that district courts consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Rule 23(e)(2)(C)(ii). And it requires that courts assure themselves that class's recovery is commensurate with "the terms of any proposed award of attorney's fees." Rule 23(e)(2)(C)(iii). Two appellate courts interpreting Rule 23 after these amendments have repudiated the "made available" fiction. *Briseño*, 998 F.3d at 1026; *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021). *Wawa I*, while less categorical, still instructs that "courts must place greater weight on the claims rate" when funds are reversionary, especially "when class members must do more than raise hands" to get a payment. 85 F.4th at 723.

Injunctive relief is another tool that enables settling parties to inflate the perceived value of a settlement. Injunctive relief valuation is "easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Defendants benefit from *res judicata* following judicial approval of the settlement and the minimal cost of any incremental relief, while class counsel hopes for approval of a higher fee request. Here, class counsel deployed the settlement's injunctive relief—Wawa's expenditure of money on additional data security protocols that long predated the settlement

(JA1306-07, 1309)—as background flavor to support their fee request. JA738-39. Although the court acknowledged that the injunctive relief duplicated Wawa's existing practices, it still treated that relief as a "central" factor justifying looking to the amounts made available rather than the amounts distributed. JA32-36.

Lastly, settlements can provide coupons or other non-cash relief, a "prime indicator of suspect settlements," to puff up settlement valuations. *Wawa I*, 85 F.4th at 723 (quoting *GM Trucks*, 55 F.3d at 803). To some degree, coupon relief has fallen out of favor since the Class Action Fairness Act ("CAFA") now requires that fees attributable to such relief be based on a percentage of those coupons actually redeemed. 28 U.S.C. § 1712; *see generally Drazen v. Pinto*, 106 F.4th 1302 (11th Cir. 2024). This settlement provides that less than 3% of the face value of the class's recovery will be paid in cash, the rest will be paid in $5 or $15 Wawa gift cards, with the vast majority of claimants receiving a $5 gift card. Even of the $9m "made available," only $1m was cash. To be sure, the parties submitted evidence that 97.2% of the value loaded onto Wawa gift cards is typically redeemed. JA350. But voluntarily loading gift cards is different than randomly receiving electronic gift via email without any expression of interest. JA1142-43; *see generally Swinton v. Squaretrade, Inc.,* 454 F. Supp. 3d 848, 866 (S.D. Iowa 2020) (citing surveys and an expert report and concluding "a redemption rate of 3%" is "typical"). Whether these Wawa gift cards constitute CAFA coupons, this Circuit requires that district courts "bring an informed economic judgment to bear in assessing its value." *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 172 (3d Cir. 1975); *see also GM Trucks*, 55 F.3d at 822 (pre-CAFA).

~~~

Excessive fee awards visit costs not just on absent class members, but on the whole class system. Fee awards that exceed class recovery intensify the "perception among a significant part of the non-lawyer population…that class action plaintiffs' lawyers are overcompensated for the work that they do." *Third Circuit Task Force Report on Selection of Class Counsel*, 74 TEMP. L. REV. at 692. They reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted). They erode public confidence in the class action device itself. *See generally Report on Contingent Fees in Class Action Litigation*, 25 REV. LITIG. 459, 466 (2006) ("The most frequent complaint surrounding class action fees is that they are artificially high….").

That "public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 692 (Cal. 2016) (Liu, J., concurring). "If class actions are typically seen as shakedowns by plaintiffs' lawyers trying to make a buck, class action filing or settlement will send a different message than if class actions are seen as compensatory." Russell M. Gold, *Compensation's Role in Deterrence*, 91 NOTRE DAME L. REV. 1997, 2001 (2016); *see also* Gold, 91 NOTRE DAME L. REV. at 2029 (noting empirical surveys reveal that public believes class members should be compensated and class actions are dysfunctional). To prevent any further erosion and to rehabilitate the class device, "it is important that courts should avoid awarding 'windfall fees' and that should likewise avoid every appearance of having done so." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985); *accord Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408, 419-20 (5th Cir. 2022).

To be clear: Frank is not complaining that class counsel settled the case for $6.1 million instead of $50 million or even $7 million. If parties negotiating at arm's length believe the appropriate compromise of the value of litigation is $6.1 million, so be it. But what class counsel may not do is exaggerate the value of a settlement, and then extract a disproportionate share of the settlement value as fees. This happened here: the class will receive less than $2.9 million, while the attorneys get $3.2 million, even after a panel of this Court called the same award into question.

## II. The district court violated *Wawa I*'s mandate, as well as principles of judicial estoppel and forfeiture, when it concluded that the final settlement did not provide clear sailing and that the first three proposed settlements did not intend a fee reversion.

**Standard of Review:** Most courts review the interpretation of settlement agreements *de novo*. *E.g. In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022); *Kay Co. v. Equitable Prod. Co.,* 27 F.4th 252, 258 (4th Cir. 2022); *BP Expl. & Prod. v. Claimant ID 100281817*, 919 F.3d 284, 287 (5th Cir. 2019). But this Court only reviews "contract construction, that is, the legal operation of the contract" *de novo. In re NFL Players' Concussion Injury Litig.*, 923 F.3d 96, 107 n.8 (3d Cir. 2019). It reviews contract interpretation for clear error. *Id.*

Adherence to the *Wawa I* mandate is reviewed *de novo. United States v. Kennedy*, 682 F.3d 244, 253 n.7 (3d Cir. 2012). As is the law of the case. *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023).

Judicial estoppel and forfeiture are reviewed for abuse of discretion. *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 108 (3d Cir. 1999); *United States v. Dowdell*, 70 F.4th 134, 140

(3d Cir. 2023). Abuse of discretion occurs if the decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *GM Trucks*, 55 F.3d at 783 (internal quotations omitted). Or if it fails to provide reasoning and explanation. *Golan v. Saada*, 596 U.S. 666, 679 (2022); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

## A.    The settlement contains clear sailing.

Until *Wawa I* vacated the initial fee award, no one disputed that Paragraph 78 of the settlement—which obligates Wawa to "cooperate with Class Counsel…in providing information…in connection with preparing [Class Counsel's] fee petition" (JA1032)— implied that Wawa would not object to fees. In plaintiffs' motion introducing the initial settlement, they represented, "Wawa has agreed to pay a lump sum of $3.2 million to cover…attorneys' fees…" Mem. in Support of Consumer Track Plaintiffs' Motion for Award of Attorney's Fees, Dkt. 180 at 15. The court preliminarily approved the settlement on that understanding. JA690 ("Wawa has agreed to pay…"). In their subsequent fee motion, plaintiffs repeatedly referenced the fee agreement.[4]

Class counsel's joint declaration did too. JA736 ("The settlement benefits included…Wawa's agreement to make a separate $3.2 lump-sum payment to Class

---

[4] Dkt. 258 at 9 ("Wawa has agreed to pay the $3.2 million lump sum, subject to Court approval." (citing Settlement ¶¶77-79)); *id.* at 12 ("Defendant also agreed to pay the $3.2 million lump sum for attorneys' fees…"); *id.* at 13 ("the Parties agreed that Wawa will pay a $3.2 million lump sum to be used for attorneys' fees…Courts generally prefer that litigants agree to a fee award"); *id.* at 42 (requesting "that the Court approve Defendant's agreed upon payment of a $3.2 million lump sum…").

Counsel"), JA740 ("Judge Welsh assisted the Parties in coming to agreement that Wawa will make a separate lump sum payment of $3.2 million to be used to pay attorneys' fees…"). As did the mediator's declaration. JA439 ("Wawa has also agreed to make a separate $3.2 million lump sum…"). And plaintiffs' briefing in support of final approval. Dkt. 272 at 19 ("The parties agreed that Wawa will pay—subject to Court approval—the aggregate amount of $3.2 million to cover attorneys' fees…").

When Frank criticized the clear-sailing provision as "red-carpet treatment" that "deprives the court of the advantages of the adversary process," plaintiffs did not deny the provision's existence. Instead, they said that "Wawa's agreement to not file an opposition to Plaintiffs' fee request here does no such thing; it is already the subject of judicial scrutiny because…the Court is a fiduciary of the class…." Dkt. 272 at 48. They continued, "Clear sailing provisions are common in class actions. Courts in this circuit have rejected similar attacks on clear sailing provisions where the settlement is otherwise non-collusive and reasonable." Dkt. 272 at 48. And they concluded that, given the arms' length mediation, "the presence of a clear sailing clause does not provide a basis for withholding approval of the settlement." Dkt. 272 at 49.

The district court agreed, relying on those exact arguments to finally approve the settlement despite the clear-sailing clause. JA1188. Because they persuaded the court to accept their justification for clear sailing and approve the settlement, plaintiffs were judicially estopped from later arguing the inconsistent position that clear sailing did not exist. *See New Hampshire v. Maine,* 532 U.S. 742, 750-52 (2001); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319-20 (3d Cir. 2003).

Plaintiffs hummed the same tune on appeal. *See* Brief of Plaintiffs-Appellees, *In*

*re Wawa, Inc. Data Sec. Litig.*, No. 22-1950, Dkt. 34 at 8 (3d Cir. Nov. 9, 2022) ("Wawa agreed to separately pay…$3.2 million for attorneys' fees…"), at 12 ("these payments were to come out of the $3.2 million that Wawa had agreed to pay…"). At oral argument, the Court asked both parties what benefit clear sailing provided. Class counsel responded, "I suppose the benefit could be that there'd be fewer briefs filed on that"; "it was probably just a matter of streamlining the process"; and separately argued that the district court had given the settlement the "closer" look necessary when clear sailing is present. Transcript of Oral Argument, No. 22-1950, at 19:46-51, 20:34-39, 21:09-28, *available at* https://www2.ca3.uscourts.gov/oralargument/audio/22-1950InReWaWaIncData.mp3. Wawa's counsel responded that the benefit was "certainty as to the amount of the attorneys' fees"; "we could then negotiate and agree upon the amount of attorneys' fees that Wawa would be willing to pay." *Id.* at 29:40-31:02.

*Wawa I* rebuffed the notion that an independent mediation sufficed to justify clear sailing. 85 F.4th at 826. It remanded for district court to scrutinize "the *presence* of side agreements," including "the clear sailing provision, where Wawa promised as part of the settlement not to challenge class counsel's request for an agreed-upon attorney's fee award." 85 F.4th at 725, 27 (emphasis added).

This was *Wawa I*'s mandate. "From the earliest days of the republic, and continuing through today … an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *United States v. Kennedy*, 682 F.3d 244, 252 (3d Cir. 2012) (internal quotation omitted). "A trial court must implement both the letter and spirt of the mandate, taking into account the appellate court's

opinion and the circumstances it embraces." *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). Instead, the district court concluded the settlement did not provide clear sailing, explaining that it had "simply assumed" the existence of clear sailing before, and it "does not read" *Wawa I* "to affirmatively find that a clear-sailing clause exists here either." JA20. This conclusion was error; it violated the mandate and the law of the case.

As for the mountain of representations that the parties had made about the "agreed to" $3.2 million fee, the district court reasoned that "agreed to" did not mean Wawa waived its "right to *contest* the fee," only that it agreed that plaintiff could request $3.2 million. JA16. (emphasis in original). But why would class counsel agree to cap their fee motion with no reciprocal benefit? They already had the right to file the motion.

More importantly, if relief is "agreed to," that denotes unopposed. In common parlance "agree" means "to consent to as a course of action." Agree, MERRIAM-WEBSTER, (Aug. 29, 2024), https://www.merriam-webster.com/dictionary/agree. In legal parlance it means "[t]o exchange promises; to unite in an engagement to do or not do something." Agree, BLACK'S LAW DICTIONARY (11th ed. 2019). Although Black's Law Dictionary no longer defines "agreed," an older edition defines it as "Settled or established by agreement." Agreed, BLACK'S LAW DICTIONARY (6th ed. 1990).

The district court also reasoned that to "cooperate" in preparation of the fee petition would not "[f]acially" "prevent Wawa from objecting to class counsel's fee petition." JA12. In a vacuum that may be plausible, but not in the context of this agreement. Paragraph 35 of the settlement provided that "Wawa shall cooperate…in

connection with Plaintiffs' Counsel's motions for Preliminary Approval and Final Approval of the Settlement." JA1017. Under the district court's interpretation of "cooperate," Wawa could have objected to the preliminary and final approval motions, provided it had done so cooperatively. *See* JA1404 ("The Court: You are either going to be cooperative or you are going to be obdurate").

Not so. Contract construction ought not "produce absurd results." *Harrity v. Continental-Equitable Title & Tr. Co.*, 124 A. 493, 494 (Pa. 1924); *Nationwide Ins. Co. v. General Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1176 n.7 (Pa. 1993). Although "not absolute," "a term in a contract which is first used in a particular manner in the contract is usually given the same meaning throughout the remainder of the contract." *Commonwealth v. UPMC*, 129 A.3d 441, 468 (Pa. 2015). The consistent meaning of "cooperate" in paragraphs 35 and 78 entails not only an affirmative obligation, but also implies an agreement not to object.

Wawa's cooperation obligation has operated as a *premium* clear sailing clause— more valuable to class counsel than a bare agreement to take no position on fees. Wawa agreed to value the injunctive relief "at no less than $35 million." JA1022. In briefs, declarations, and at oral arguments, Wawa became a full-fledged proponent of class counsel's $3m fee request, even while the settlement itself was in no jeopardy. *E.g.*, JA988, 1271, 1419-1421, 1425-29; *see also* JA1319-20 (giving other examples).

Lastly, the court committed reversible error by failing to address Frank's argument (JA1326-27) that, by raising it for the first time on remand, the settling parties forfeited the argument that clear sailing doesn't exist. Similar to judicial estoppel, the forfeiture doctrine "protects litigants from unfair surprise, promotes the finality of

judgments, [and] conserves judicial resources." *Falcone v. Dickstein*, 92 F.4th 193, 210 (3d Cir. 2024) (simplified). In civil cases, only "truly exceptional circumstances" "excuse forfeiture." *Id.* (internal quotation omitted). Here, none do: Frank has relied on representations that clear sailing exists, and indeed those representations formed the predicate for the district court's final approval order and this Court's decision in *Wawa I.*

In holding that the settlement contains no clear sailing, the opinion below misinterpreted the settlement, contravened *Wawa I*'s mandate, and ignored the doctrines of judicial estoppel and forfeiture.

## B. The first three proposed settlements intentionally segregated fees from class relief.

*Wawa I* didn't stop at the clear-sailing agreement; it also remanded for scrutiny of the "fee reversion…, providing that any court-ordered reduction in the attorney's fee award would be returned to Wawa—not the class." 85 F.4th at 726. *Wawa I* observed that a fee reversion is a "gimmick for defeating objectors" and thereby insulates class counsel's fee request especially when "combined with a clear sailing clause." *Id.* It determined that the eventual removal of the fee reversion was "a welcome change, but not as welcome as if the fee reversion had never existed" because it "need not stay in the final approved settlement to serve its deterrent purpose." *Id.* at 727.

But again, the district court on remand concluded that the parties "made no such agreement"; the "de facto fee reversion" was merely the result of "human error" "omission." JA22, 23. And again, this holding—that the fee reversion was unintended—violated *Wawa I*'s mandate. Class counsel at *Wawa I* argument acknowledged that the fee reversion "was something that we negotiated at the

mediation that we had with Judge Welsh." Transcript of Oral Argument, No. 22-1950, at 13:58-14:02; *see also id.* at 14:50-52 ("just to be clear, I was talking about the reverter and kicker thing, in response to Judge Matey's question").

As importantly, the very intention of the reversion was written into the settlement: "The parties further agree that the amount…of attorneys' fees…are intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement." JA1033 (Settlement ¶83). This enabled class counsel to repeatedly argue that the fee award "will not reduce any settlement benefits made available to the class." *E.g.*, JA740; Dkt. 258 at 9; Dkt. 258 at 13 (arguing that "the Court's fiduciary role in overseeing the award is greatly reduced" [w]here, as here, the fee award is to be paid separately by the defendant rather than as a reduction to the common fund."). Little wonder that during Frank's negotiation to unwind the reversion, Wawa's counsel believed that class counsel would be unwilling to assent. JA1317-18.

The opinion below misunderstands the import of class counsel's "will not reduce" argument. JA25. It's not a matter of whether the statement was "accurate[]"[5]— it's a matter of discouraging scrutiny of the fee award, from objectors and the court. Nor was the statement "consistent" with the "proposition that any reduction in attorneys' fee would *increase* the amount claimed by the class." JA25. In fact, the two are mutually exclusive. Under Rule 23(h), there is no fee award before the court acts. If

---

[5] That said, it was indisputably misleading when class counsel made that claim at the fairness hearing after the Third Amendment's elimination of the fee reversion. JA1080.

granting the fee award in full wouldn't reduce class benefit, then denying it wouldn't augment class benefit. Thus, fee segregation becomes a "gimmick for defeating objectors." *Wawa I*, 85 F.4th at 726.

The district court focused (JA27-28) on negating any hint of collusion, but again, as Frank repeatedly pressed, that is not the relevant inquiry. Non-collusive negotiations between class counsel and defense counsel can ensure that the total amount of the constructive common fund is *adequate*, but not that this amount is fairly "*allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. *Wawa I* directly rejects, as "insufficient," attempting to justify side agreements by reference to mediator-overseen negotiation after the parties had reached agreement on class relief. 85 F.4th at 726. A mediator does not guarantee that the "end product" is a fairly allocated settlement. *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)). Nor does the timing "end the inquiry" because the segregated payments to class and counsel remain a packaged deal. *Id. See also Roes*, 944 F.3d at 1049 n. 12 (arm's-length negotiation is question of satisfying Rule 23(e)(2)(B), and does not create presumption of satisfying different elements of Rule 23(e)(2)).

*Wawa I*'s references to "collusion" are shorthand for the inherent agency problem between principal and agent (class members and class counsel) in class action litigation, a problem that often leads to class counsel's self-interest prevailing through excessive fee terms at the expense of class members' recovery. While Rule 23's "adequacy of representation inquiry is designed to foreclose" "*actual*…collusion," Rule 23(e)(2)(C) examines the objective "end product." *Bluetooth*, 654 F.3d at 948

(pre-2018 amendments to Rule 23). Put simply, the "fruitful" issue is whether "actual terms of the settlement" serve the "self-interest" of class counsel and the defense, not whether those terms result from backroom "collusion" or "nefarious conspiracy." Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. at 871 (cited by *Wawa I*, 85 F.4th at 717 n.3, 719 n.8, & 723 n.19). As Erichson explains, "[e]ven if discussion of fees is postponed until after other settlement terms are reached, and even if a mediator oversees the discussion, there is much to be lost and nothing to be gained by allowing a defendant to participate in deciding how much class counsel ought to be paid for achieving a class action settlement." *Id.* at 903.

Because "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense," the arms'-length negotiation of the fee provision between class counsel and defendant (as Rule 23(e)(2)(B) requires) does not safeguard the fairness of the allocation between class counsel and class members (as Rule 23(e)(2)(C) requires). *GM Trucks*, 55 F.3d at 820 (internal quotation omitted); *accord Briseño*, 998 F.3d at 1030 (satisfying (e)(2)(B) does not mean (e)(2)(C) is satisfied); *Roes*, 944 F.3d at 1049 n.12 (same); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (calling it "naïve" to rely on "arms-length negotiation by experienced counsel" to ensure settlement fairness).

In holding that initial settlements never intended a fee reversion, the opinion below misinterpreted the settlement, the record evidence, and *Wawa I*'s mandate.

**III. The district court legally erred in awarding counsel a percentage of the gift cards and cash that class members will never receive.**

**Standard of Review:** Attorneys' fees awards are reviewed for abuse of discretion. *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005). Abuse of discretion occurs if the decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *GM Trucks*, 55 F.3d at 783 (internal quotations omitted). One example is if the court fails to consider or properly apply an essential factor. *Wallach v. Eaton Corp.*, 837 F.3d 356, 377 (3d Cir. 2016); *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633-34 (3d Cir. 1989). Whether the court has employed the correct legal standard is a legal question "subject to plenary review." *Rite Aid*, 396 F.3d at 299.

~~~

The opinion below interprets *Wawa I* as merely a magic-words requirement, satisfied by passing acknowledgment of the obligation to "place greater weight on the claims rate," whether or not the claims rate influences the analysis. *Compare* JA38, *with* JA29-40. To be sure, it would have been preferable for this Court to categorically repudiate the "made available" fiction like the Ninth and Tenth Circuits have since the 2018 amendments, and like the Seventh Circuit has long done. *See, e.g., Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992-93 (9th Cir. 2023); *Samsung*, 997 F.3d at 1094; *Pearson*, 772 F.3d at 781-82. That repudiation would be consistent with this Circuit's longstanding preference for class action doctrine based on "economic reality" rather than abstract fiction. *See supra* at 26-27 (citing cases dating back to *GM Trucks*). Frank preserves this issue for further review by the full Court or the Supreme Court.

Still, *Wawa I*'s "case-by-case" approach does not mean unlimited discretion. Rule 23 contemplates "detailed demands" and requires particular "considerations." 85 F.4th at 722-23. For four reasons, the district court's award of a percentage of the value "made available" did not satisfy Rule 23 or *Wawa I* in the context of this case.

*First*, as discussed in Section II, the district court misapprehended the clear sailing and fee reversion provisions insulating counsel's fees. That misapprehension contaminated its exercise of discretion on the later question of whether to determine fees based on amounts distributed or amounts "made available." *See Wawa I*, 85 F.4th at 726-27 (remanding for consideration of whether the side agreements "make[] the fee request unreasonable"). The side agreements counsel against looking to hypothetical amounts because such agreements deprive the court of adversarial testing from the party best positioned to offer an on-the-ground fee objection—the defendant. These terms "place a heightened duty on the district court" and mean that it "must resolve[] against class counsel" "any doubts regarding [fee billing]." *Samsung*, 997 F.3d at 1094. The same principle applies to determining the benchmark for the fees (actual amounts or hypothetical amounts): where "class counsel's bargains for a defendant's agreement not to challenge a request for fees," doubts should be resolved against them. *Id.* When a defendant's liabilities are contingent, "courts must place greater weight on the claims rate." *Wawa I*, 85 F.4th at 724. Here, Wawa's liabilities were contingent three times over: the unclaimed "amounts available" from each of the tiers will revert, any unredeemed value from the Gift Cards will revert, and the excess in negotiated fees would have originally reverted. The district court's failure to recognize the intentional fee reversion prejudiced its analysis.

*Second*, less than $100,000 in cash was claimed by the class—the remaining 97% of the value provided under the settlement comes from $5 or $15 gift cards. Additionally, only one-ninth of the $9m value made available was cash—the remaining $8m was gift card value. Again, *Wawa I* flags this as a salient consideration. 85 F.4th at 723 ("[C]lass members naturally value cash over gift cards…Courts should take special notice when class members are offered discounts and tickets while others—like counsel—get cash"). Yet again, on remand, the district court offered only the same rationales as before: Wawa stores offer a wide array of products and their gift cards have a high redemption rate. JA29-31. The district court did not address the fact that the redemption rate for settlement e-gift cards, distributed without an expression of interest, would not approximate the redemption rate of gift cards that individuals voluntarily purchase and load. Indeed, the district court imprecisely stated that "563,955 claims were made," a rate of "about 2.56%." JA37. In reality, less than 8000 class members filed valid claims, of which only 254 were Tier 3 cash claims. JA981-82, 1167. The actual claims rate is .03% or three-hundredths of one percent. The remaining 555,000 "claims" are loyalty app users due to receive unsolicited $5 electronic gift cards. For purposes of estimating and comparing likely redemption rates, this fact matters.

*Third*, 97% of the class will receive no compensation but will lose their right to sue. This minimal participation rate was a foregone conclusion, given the lack of direct notice to class members, the documentary proof of purchase required to submit any claim, and the minimal non-cash amounts made available. JA895-96. When they moved for appointment, class counsel themselves acknowledged the need to simplify the claims process to avoid a low claims rate, promised that they had "learned" from other

data breach cases "the importance of using a simple claim form and claims process to maximize class members' participation," and committed to requiring only "minimal effort or documentation." Dkt. 78 at 25. Yet they negotiated a settlement that demanded documentation (*e.g.*, a credit card activity statement) and attestation before class members could submit **any** claim, even a most basic $5 gift-card Tier 1 claim. Wawa's acknowledged that the $5 and $15 caps on gift card values were "a matter of negotiation" not a result of "linear analysis" of the value of class members' claims. JA325. It was that negotiated value that was too small to prompt class members to jump spend the time to pull an account statement and file a claim.

Together, these factors should have led the district court to look to the amounts recovered, not those merely "made available." Instead, the district court took the exact opposite tack; it concluded that the "practical dynamics" of data breach litigation in which few class members sue, and settlements suffer from endemically low claims rates *favored* looking to the hypothetical, rather than the actual, recovery. JA37-39, 42. As in some other domains of Rule 23, these practical dynamics are "a product of inertia and inattention." *Johnson*, 975 F.3d at 1260. Class counsel won appointment by assuring the court that it had learned lessons from the poor take rates in other data breach litigation.

Moreover, the public policy implications of the district court's position are backward. Class counsel shouldn't garner more favorable treatment for engaging in a type of litigation (data breach) that, on the court's view, consistently fails to produce meaningful compensation for class members. That would discourage attorneys from bringing especially socially useful litigation. Thus, even if the court were correct to infer, using a breakdown of the administrator's data that included non-claiming mobile app

users, that "over 99.95% of claimants under the settlement agreement…did not suffer any pecuniary harm from this data breach" (JA36), the result should not be awarding counsel a bonus in fees when, by the court's own lights, the hypothetical amount was never capable of being claimed. *Cf. GM Trucks,* 55 F.3d at 821 (explaining that common fund fees ought "reward[] counsel for success and penalize[] it for failure"); *Prudential,* 148 F.3d at 333 (same); *Cendant PRIDES,* 243 F.3d at 732 (same).

*Fourth* and finally, the only other reason offered for focusing on the hypothetical amounts—the settlement's purported injunctive relief—fails, as a matter of law, to justify the decision. JA32-36. "There is no dispute that Wawa acted to improve its data security system" before the settlement, even before the litigation was filed. JA32. For example, Frank submitted evidence from Wawa's own spokesperson that Wawa's transition to EMV technology had already "been underway for months" at the time plaintiffs sued, and would be completed by late 2020. JA1392. The settlement acknowledges that Wawa had already voluntarily authorized tens of millions of dollars of additional spending to improve its data security practices. JA1021. There is nothing in the record, in either of Wawa's counsel's two declarations on injunctive relief, or otherwise suggesting that Wawa would consider retrenching the data security changes that it had spent millions to implement.

Yet the district court found value in Wawa's agreement to be legally bound to its practices. JA32-36. That was a legal miscue: an injunction obligating a defendant to continue doing what it was doing has "no real value." *Koby*, 846 F.3d at 1080. Wawa's voluntary, pre-settlement changes, later codified in the settlement, do not count as a compensable settlement benefit. *See In re Subway Footlong Sandwich Mktg. & Sales Practices*

*Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) (comparing "state of affairs before and after the settlement" to find relief "utterly worthless"); *Pampers*, 724 F.3d at 719. Courts must distinguish benefits generated by the settlement from relief provided independently of the settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338 (3d Cir. 1998); *accord Linneman v. Vita-mix Corp.,* 970 F.3d 621, 634 (6th Cir. 2020). Even if it was the complaint filings that impelled Wawa's board to act in February 2020, it is "the *incremental* benefits" from the settlement that count, "not the total benefits" from the litigation. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). The district court committed reversible error by according weight to injunctive relief that duplicated the *status quo ante*.

In sum, when determining whether to award fees based on actual, or hypothetical, recovery, the district court relied on a faulty interpretation of the settlements, ignored essential factors, and considered an improper factor.

## Conclusion

This Court should vacate the fee award and remand for proceedings consistent with *Wawa I*.

Dated: September 11, 2024

Respectfully submitted,

/s/ Adam E. Schulman
Adam E. Schulman
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Objector-Appellant*
*Theodore H. Frank*

<h1 style="text-align:center">Combined Certifications</h1>

**1. Certification of Bar Membership**

I hereby certify under L.A.R. 28.3(d) that I, Adam E. Schulman is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

**2. Certification of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,696 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Garamond font.

**3. Certification of Service**

I hereby certify that on September 11, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

**4. Certification of Identical Compliance of Briefs**

In accordance with L.A.R. 31.1(c), I hereby certify that the electronic and hard copies of this brief in the instant matter contain identical text

**5. Certification of Virus Check**

In accordance with L.A.R. 31.1(c), I hereby certify that a virus check of the electronic PDF version of the brief was performed using McAfee Internet Security software and the PDF file was found to be virus free.

Executed on September 11, 2024.

*/s/ Adam E. Schulman*
Adam E. Schulman