No. 24-1874

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

*In re* Wawa, Inc., Data Security Litigation

Theodore H. Frank,
*Appellant*

Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 19-cv-0619

**BRIEF OF IOWA, ALABAMA, ALASKA, ARKANSAS,
FLORIDA, GEORGIA, IDAHO, INDIANA, LOUISIANA,
MONTANA, OHIO, SOUTH CAROLINA, TENNESSEE,
UTAH, VIRGINIA, AND WEST VIRGINIA ATTORNEYS
GENERAL AS *AMICI CURIAE* IN SUPPORT OF
OBJECTOR-APPELLANT AND REVERSAL**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General

September 18, 2024

Patrick Valencia
Deputy Solicitor General

Breanne A. Stoltze
Assistant Solicitor General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

*Counsel for Amicus Iowa Attorney General's Office
(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF AMICUS CURIAE .............................................. 1

SUMMARY OF THE ARGUMENT .................................................. 3

ARGUMENT .................................................................................... 4

I.  Basing the fee award on an imaginary $9-million settlement fund was an abuse of discretion. .............................................. 6

    A.  Fee awards should be based on relief actually delivered to the class rather than relief hypothetically available. ... 6

II.  Relying on illusory injunctive relief was an abuse of discretion. ............................................................................... 10

III.  Settlements with disproportionate attorney fee allocations are not fair, reasonable, or adequate under Rule 23 and attorney fees must relate to the class benefit. ....................... 14

CONCLUSION ............................................................................... 19

CERTIFICATE OF COMPLIANCE ............................................... 22

CERTIFICATE OF SERVICE ........................................................ 23

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................... 9

*Benson v. Enter. Leasing Co. of Orlando, LLC*, 2022 WL 4354846 (M.D. Fla. Sept. 20, 2022) ................................................ 22

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................... 16

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ........ 15

*Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214 (W.D.N.Y. 2017) ..................................................................... 11, 23

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ................... 22

*Ferrer v. CareFirst, Inc.*, 2019 WL 11320974 (D.D.C. Sept. 30, 2019) .......................................................................... 10

*Flerlage v. US Foods, Inc.*, 2020 WL 4673155 (D. Kan. Aug. 12, 2020) .......................................................................... 22

*Gross v. Wash. Mut. Bank, F.A.*, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ....................................................................... 9

*Hart v. BHH, LLC*, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)  12

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987) ...................................................................................... 21

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ......................................................................... 13

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) .. 12, 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................................................................... 19, 21, 23

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) 20

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013).. 18, 21

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ............................. 15, 20, 21

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ....... 19

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Action*, 148 F.3d 283 (3d Cir. 1998) ................................................ 17

*In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) .. 20, 22

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395 (D. Mass. 2008) ............................................................... 23

*In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2009) ................................................................................. 10

*In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023).... 11, 14, 16

*In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114 (2d Cir. 2014).................................................................................. 10

*In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006).................................................................................. 10

*Int'l Precious Metals Corp. v. Waters*, 530 U.S. 122 (2000) (O'Connor, J., writing on denial of certiorari)...................... 22

*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (8th Cir. 1996) . 20

*Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017) 17, 18

*Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985 (9th Cir. 2023) . 13, 15, 23

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).............. 18, 22

*Prandini v. Nat'l Tea Co.*, 557 F.2d 1015 (3d Cir. 1977) .............. 20

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014). 10, 12, 22, 23

*Rosquist v. Soo Line R.R.*, 692 F.2d 1107 (7th Cir. 1982)............. 10

*Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) ........................................................................... 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...................... 16

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ................................................................................. 21

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .... 23

*Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848 (S.D. Iowa 2020).................................................................................. 14

*Tabiti v. LVNV Funding LLC*, 2019 WL 13261836 (N.D. Ill. Oct. 11, 2019)............................................................................ 22

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989).................................................................................. 19

**Statutes**

28 U.S.C. § 1715............................................................................ 6

# Rules

Fed. R. App. P. 32(a)(5) .................................................... 25
Fed. R. App. P. 32(a)(6) .................................................... 25
Fed. R. App. P. 32(a)(7)(B) ............................................... 25
Fed. R. App. P. 32(f) ........................................................ 25
Fed. R. Civ. P. 23 ........................................................ passim
Fed. R. Civ. P. 23(e) ........................................................ 11
Fed. R. Civ. P. 23(e)(2) ............................................ 8, 9, 11
Fed. R. Civ. P. 23(e)(2) (D), Advisory Committee Notes to 2018
      Amendment ............................................... 8, 9, 12
Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes to 2018
      Amendment ............................................... 8, 9, 12

# Treatises

7B Fed. Prac. & Proc. Civ. § 1797 (3d ed. 2023 update) ................. 9
ALI, Principles of the Law of Aggregate Litig. § 3.13 (2010) ........ 12
Manual for Complex Litigation (Fourth) § 21.71 (2004) .............. 10
Manual for Complex Litigation § 21.71 ........................................ 12

# Other Authorities

Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane
      L. Rev. 1809 (2000) ............................................. 19
Deborah R. Hensler, et al., *Class Action Dilemmas: Pursuing
      Public Goals for Private Gain* (RAND Inst. for Civil Justice
      1999) ..................................................... 9, 10, 15, 24
Howard M. Erichson*, Aggregation as Disempowerment: Red Flags
      in Class Action Settlements*, 92 Notre Dame L. Rev. 859
      (2016) ...................................................... 8, 15, 17
James Tharin & Brian Blockovich, *Coupons and the Class Action
      Fairness Act*, 18 Geo. J. Legal Ethics 1443 (2005) .............. 14
S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3 ....................................... 6
S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 35 ..................................... 6
S. Rep. No. 109-14, 2005 U.S.C.C.S. Rep. No. 109-14, 2005
      U.S.C.C.A.N. 5 ....................................................... 6

## STATEMENT OF AMICUS CURIAE

The Attorneys General of Iowa, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Louisiana, Montana, Ohio, South Carolina, Tennessee, Utah, Virginia, and West Virginia are their States' chief law enforcement or legal officers. Their interest here arises from two interrelated responsibilities.

*First*, Attorneys General have an overarching responsibility to protect their States' consumers.

*Second*, they are responsible for protecting consumer class members under the Class Action Fairness Act, which creates a role for State Attorneys General in the class action settlement approval process. *See* 28 U.S.C. § 1715; *see also* S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3, 5 (requirement "that notice of class action settlements be sent to appropriate state and federal officials" exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens"); *id.* at 35 ("[N]otifying appropriate state and federal officials . . . will provide a check against inequitable settlements"); *id.* ("Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties.").

Attorneys General submit this brief to further those discrete interests. *See* Fed. R. App. P. 29(a)(2). This brief continues past

State Attorney General efforts to protect consumers from class action settlement abuse. Past efforts have produced meaningful settlement improvements for class members. *See, e.g.*, *Cowen v. Lenny & Larry's Inc.*, No. 17-cv-01530, Dkts. 94, 110, 117 (N.D. Ill. amended settlement approved May 3, 2019) (amended settlement class cash recovery from $350,000 up to about $900,000 after government involvement); *Allen v. Simiasan Corp.*, No. 12-cv-376, Dkts. 219, 223, 257, 261, 268 (S.D. Cal. settlement approved Aug. 17, 2017) (class cash recovery increased from $0 up to about $700,000 following State Attorney General coalition amicus brief and district court rejection of initial settlement); *Unknown Plaintiff Identified as Jane V., et al., v. Motel 6 Operating LP*, No. 18-cv-0242, Dkts. 50, 52, 58, 63, 64, 75 (D. Ariz. amended settlement approved Aug. 2, 2019) (parties amended settlement agreement to increase minimum class member recovery from $50 to $75 and to remove class caps following Attorney General concerns about settlement distribution).

## SUMMARY OF THE ARGUMENT

Rule 23 demands that class action settlements—and their accompanying attorneys' fees—be grounded in the actual relief that class members receive. Yet the $3.2-million fee award here is based on illusory relief to the class. Low claims rates are an open secret—here, an open secret that elides the fact that two thirds of the $9-million settlement fund is phantom relief that class members will never see. And injunctive relief creates the illusion that counsel increased the settlement's value but there "is no dispute" Defendant's remedial actions preceded any settlement agreement. *See* Dkt. 438 at 32.

Under Rule 23, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) and (D) Advisory Committee Notes to 2018 Amendment. But "courts must not assume all negotiated remedies have value." Howard M. Erichson, *Aggregation as Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L. Rev. 859, 878 (2016). Here, the real numbers leave more than half of all actual monetary relief and nearly all cash relief in counsel's pockets. Such a grossly disproportionate settlement allocation cannot be "fair," "reasonable," or "adequate" under Rule 23. Fed. R. Civ. P. 23(e)(2).

This Court should vacate the settlement approval and declare a court's first consideration must be the real benefit to the class—

not phantom settlement funds and illusory injunctive relief. The Attorneys General endorse that approach as giving consumers critical protection by aligning the interests of class counsel with those of the class.

## ARGUMENT

Class counsel should only recover fees based on relief actually delivered to the class. That relief is the "central concern" when determining a fee award and, in turn, analyzing whether a settlement is fair, reasonable, and adequate" under Rule 23. Fed. R. Civ. P. 23(e)(2); Fed. R. Civ. P. 23(e)(2)(C) and (D) Advisory Committee Notes to 2018 Amendment. Rule 23 protects "unnamed class members 'from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7B Fed. Prac. & Proc. Civ. § 1797 (3d ed. 2023 update)); *see also Gross v. Wash. Mut. Bank, F.A.*, 2006 WL 318814, at *4 (E.D.N.Y. Feb. 9, 2006).

"The single most important action judges can take to support public goals of class action litigation is to reward class action attorneys only for lawsuits that actually accomplish something of value for class members and society." Deborah R. Hensler, et al.,

*Class Action Dilemmas: Pursuing Public Goals for Private Gain* 490 (RAND Inst. for Civil Justice 1999); *see also* Manual for Complex Litigation (Fourth) § 21.71 (2004).

In conducting this analysis, "the actual value conferred on the class, not the potential, pie-in-the-sky recovery, more closely resembles class counsel's actual success." *Ferrer v. CareFirst, Inc.*, 2019 WL 11320974, at *6 (D.D.C. Sept. 30, 2019) (citations omitted); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("We have emphasized that in determining reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation."). Courts should modify fees to protect class interests and ensure class counsel are not enriched at the class's expense. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 n.9 (2d Cir. 2014) (citing *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982); *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 561–62 (E.D. La. 2009); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 490 (E.D.N.Y. 2006)).

Here, the district court relied on phantom recovery to approve a fee award, giving counsel $3.2 million in cash while leaving the class with $2.9 million in gift cards and about $80,000 in cash. That reality should be a significant factor in vacating the fee award.

## I. Basing the fee award on an imaginary $9-million settlement fund was an abuse of discretion.

While Defendant agreed to pay class members up to $9 million to release their claims, the class is actually receiving just $2,905,195. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 717 (3d Cir. 2023). Of that $2.9 million, about 97 percent—or $2,815,075— will be paid in $5 Wawa gift cards. *Id.* at 716–17. Of the remaining three percent, $10,290 will be paid in $15 Wawa gift cards, while just $79,830 will be paid in cash. *Id.* Meanwhile, class counsel will receive nearly $3.2 million for fees and expenses. The remaining funds will never leave Defendant's hands, making any consumer relief purely "imaginary." *See Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 224 (W.D.N.Y. 2017).

Class settlements that fail to distinguish recovery fact from fiction undermine consumer recovery, Rule 23, and the court's duty to unnamed class members.

### A. Fee awards should be based on relief actually delivered to the class rather than relief hypothetically available.

Rule 23(e) requires courts to analyze "whether . . . the relief provided to the class is adequate, taking into account . . . the effectiveness of any proposed method of distributing relief to the class [and] the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iii). The Federal Rules thus establish that

"the relief actually delivered to the class" is a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e)(2)(C) and (D) Advisory Committee Notes to 2018.

Thus, one of the "inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013); *see also* ALI, Principles of the Law of Aggregate Litig. § 3.13 (2010) ("Attorneys' fees in class actions, whether by litigated judgment or by settlement, should be based on . . . the actual value of the judgment or settlement to the class."); Manual for Complex Litigation § 21.71 ("Fee awards should be based only on the benefits actually delivered."). In such an analysis, "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *See Redman*, 768 F.3d at 630.

But funds that revert to defendants or are never tendered to class members do not satisfy Rule 23 because they do not benefit the class. *Hart v. BHH, LLC*, 2020 WL 5645984, at *8 (S.D.N.Y. Sept. 22, 2020). Any benefit from such funds "is purely hypothetical." *Id.* As such, "[i]n cases involving a claims procedure or a distribution of benefits over time, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims." Manual for Complex Litigation § 21.71.

Despite those admonitions, the district court credited class counsel for millions of dollars that Defendant's will not pay. According to the district court, while Defendant will pay class members only $2.9 million in gift cards and (some) cash, "class counsel litigated an outcome whereby Wawa would *risk* up to $9 million." Dkt. 438 at 29–30, 37. But known recoveries in similar class action settlements establish that the $9-million settlement fund was never truly at risk. *See* Dkt. 438 at 37–38 (comparing the 2.56 percent claims rate here with other data breach class actions).

According to the court's analysis a 0.83 percent claims rate "is on par with other consumer cases" while a 1.8 percent claims rate "reflects a positive reaction" by a class. *Id.* (citing *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) and *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018)). Thus, the parties "had to know that the redemption rate—and thus the ultimate class recovery—would be extremely low here: there was no realistic possibility that the actual payout to class members would approach anywhere near [the settlement cap]." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023). So while the top-line settlement fund number could have been $10 million, $15 million, or $25 million, that would not have put any additional money in the hands of consumers.

Apparently, such a result would have increased attorney fees.

Based on the actual relief being disbursed to class members, class counsel will receive approximately 52 percent of the settlement. Indeed, class counsel likely will capture more than 93 percent of the true settlement value. About 97 percent of the class members receiving any benefit from the settlement will be paid in $5 Wawa gift cards. *In re Wawa*, 85 F.4th at 716–17.

And while Defendant contends that 97.2 percent of money loaded onto Wawa gift cards is redeemed (Dkt. 181 at 8), that statistic does not tell the whole story. That is because there is a difference between a customer who intentionally purchases a gift card and one that receives an unsolicited $5 gift card via email. Emailed gift cards, like those here, are much closer to a "corporate issued promotional coupon" where redemption rates generally are between one and 3 percent. James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443, 1445 (2005); *see also id.* at 1448 (noting multiple cases with redemption rates below 1 percent).

Indeed, courts recognized that a five-percent redemption rate is generous for low-value e-mail gift cards. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 866 (S.D. Iowa 2020) (citation omitted). As a result, nearly all the $5 gift cards will remain unspent—leaving class counsel with an even larger percentage of the settlement.

Courts "have the responsibility to guard against" settlements that "allow parties to concoct a high phantom settlement cap to justify excessive fees, even though class members receive nothing close to that amount." *Lowery*, 75 F.4th at 992 (citing *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 658–59 (9th Cir. 2020)). By "award[ing] fees in the form of a percentage of the fund *actually disbursed* to class members," judges "avoid awarding class action attorneys for dubious accomplishments." Hensler, *Class Action Dilemmas*, at 491. This fee calculation method also avoids "potential public misunderstandings" that imbalanced settlements may cultivate. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

This Court should vacate the fee award to further these goals.

## II.  Relying on illusory injunctive relief was an abuse of discretion.

The Parties' $35 million valuation of the settlement's injunctive relief provisions does not support the attorney fee award. The court found "that the injunctive relief provided by this settlement weighs strongly in favor of considering the $9 million made available to the class instead of the $2.9 million claimed" when calculating attorney fees. Dkt. 438 at 41. But illusory injunctive relief does not benefit consumers. Erichson, *Aggregation as Disempowerment*, at 878. Indeed, in reviewing an earlier version

of this settlement, the Third Circuit warned that the injunctive relief provisions could be a potential "red flag" warranting a "hard look." *In re Wawa*, 85 F.4th at 719 & n.8.

In fact, "[p]recisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Courts therefore have held that "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79 (1980)).

Here, the injunctive provisions would require Wawa to: (1) encrypt payment card information and implement Europay, Mastercard, and Visa security procedures at point of sale terminals; (2) maintain written policies regarding information security; (3) retain annually a qualified security assessor; (4) conduct yearly penetration testing and correct vulnerabilities; and (5) issue compliance report on these changes. Dkt. 428 at 4. But the district court acknowledged that "[t]here is no dispute that Wawa acted to improve its data security system before it was enjoined to do so." Dkt. 438 at 32. Indeed, "[i]n January 2020, one month after the data

breach came to light, Wawa issued several press releases stating that it would enhance security." *Id.* "The following month, Wawa's board allocated $25 million 'to improve Wawa's data security posture.'" *Id.* (quoting Decl. of Adam Schulman ¶¶ 11–12, Dkt. 429).

A settlement's 'injunctive relief is of no real value" where it does "not obligate [defendant] to do anything it was not already doing." *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017). A court's concern "is not the number of enhancements created, but rather how to value the benefits created by class counsel." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Action*, 148 F.3d 283, 338 (3d Cir. 1998). "The crux of this inquiry is distinguishing those benefits created by class counsel from the benefits created" through other means. *Id.* "The fact that class counsel and defendant struck a deal with an injunctive component does not necessarily indicate that the injunctive remedy accomplishes anything useful." Erichson, *Aggregation as Disempowerment*, at 878. More analysis is required.

The district court nonetheless concluded that "[t]he certitude provided by an order of the Court is especially valuable" in ensuring Wawa continues its voluntary data security efforts. Dkt. 438 at 33–34. But courts recognize that where a defendant already had implemented a change for business reasons, it is "unlikely to revert back to its old ways regardless of whether the settlement" included

provisions to the contrary. *Koby*, 846 F.3d at 1080. As such, a promise to continue these changes does not provide value." *Id.*

Even if Wawa stopped these new security measures, the settlement's injunctive relief is forward looking, while class members allege past harm. Courts have repeatedly recognized the "obvious mismatch" between injunctive relief consisting of only future disclosures and a class comprised of those alleging past harm. *See id.* at 1079; *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) ("future purchasers are not members of the class, defined as it is as consumers who have purchased [defendant's product]."); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 720 (6th Cir. 2013) ("'The fairness of the settlement must be evaluated primarily based on how it compensates class members'— not on whether it provides relief to other people[.]"). Accordingly, even if Wawa had not made the relevant security changes, its promises would be "worthless to most members of the class" because they would not be designed to specifically benefit "those who had suffered a past wrong." *Koby*, 846 F.3d at 1079.

Yet the district court concluded that the injunctive relief was "central to this settlement agreement." Dkt. 438 at 32. And while the district court did not include the value of the injunctive relief in its settlement fund calculation, it found "that the injunctive relief provided by this settlement weighs strongly in favor of considering

the $9 million made available to the class instead of the $2.9 million claimed" when calculating attorney fees. Dkt. 438 at 41. This was error.

## III. Settlements with disproportionate attorney fee allocations are not fair, reasonable, or adequate under Rule 23 and attorney fees must relate to the class benefit.

While attorneys should be compensated for the work they perform, courts should scrutinize settlement provisions and fee calculations that benefit attorneys at the expense of class members. The class action settlement process already raises unique due process concerns and sometimes places class members at a disadvantage. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Class counsel has an incentive to obtain a large fee—a fee that inevitably comes from class members' pockets. *See, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (explaining "interests of class members and class counsel nearly always diverge"); *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 175 ("[C]lass actions are rife with potential conflict of interest between class counsel and class members."); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (identifying the need to protect the "[c]lass from whose pockets the attorney's fees will come[.]"); Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1820 (2000) ("The Due

Process Clause requires [judges] to minimize conflicts between claimants and their representatives.").

Class action settlements require extra scrutiny because class members cannot rely on the usual adversarial relationship between the parties. *See In re Gen. Motors*, 55 F.3d at 819–20; *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 730 (3d Cir. 2001) ("[T]he danger inherent in the relationship among the class, class counsel, and defendants generates an especially acute need for close judicial scrutiny of fee arrangements in class action settlements.") (citation and internal quotation marks omitted). The defendant is "interested only in the bottom line: how much the settlement will cost." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015). Thus, to a defendant, the class award and fee award "represent a package deal." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 264 (8th Cir. 1996). Because the defendant "is interested only in disposing of the total claim asserted against it, . . . the allocation between the class payment and the attorney's fees is of little or no interest to the defense." *In re Gen. Motors*, 55 F.3d at 819–20 (quoting *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1020 (3d Cir. 1977)).

Defendants' general indifference on settlement allocation often requires courts to look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class

members to infect the negotiations." *In re Dry Max Pampers*, 724 F.3d at 718; *In re Bluetooth*, 654 F.3d at 947 (same); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (explaining concern in isolating situations "in which the client's interests are somewhat encroached upon by the attorney's interests"). Judicial scrutiny "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) (citing *In re General Motors*, 55 F.3d at 820).

With that dynamic in mind, State Attorneys General regularly present their class action settlement concerns to help protect consumers from settlement abuse.[1] The Attorneys General use CAFA notices to monitor class settlements and watch for settlement terms that undermine consumer interests. As repeat players in the class action process, the Attorneys General can spot arrangements that reward attorneys for settlements that provide

---

[1] Past coalitions of State Attorneys General have briefed district courts and courts of appeals throughout the country as well as the Supreme Court. *See, e.g.*, *Kurtz v. Kimberly Clark Corp.*, No.24-425 (2d Cir. June 14, 2024); *Briseño v. Henderson*, No. 19-56297 (9th Cir. Apr. 10, 2020); *Frank v. Gaos*, No. 17-961 (U.S. July 16, 2018); *In re Google Inc. Cookie Placement*, No. 17-1480 (3d. Cir. July 10, 2017); *In re Easysaver Rewards Litig.*, No. 16-56307, Dkt. 21 (9th Cir. May 8, 2017); *In re Google Street View Elec. Comm. Litig.*, No. 3:10-md-02184, Dkt. 189-1 (N.D. Cal. Jan. 20, 2020).

little or no meaningful value to class members. And then those Attorneys General are well placed to register their objections. Such settlements harm consumers and undermine their faith in class action's ability to provide meaningful recovery.

The ratio of class recovery to attorneys' fees in particular raises serious due process and fairness issues. *See, e.g.*, *In re Sw. Airlines*, 779 F.3d at 712; *Pearson*, 772 F.3d at 778; *Redman*, 768 F.3d at 630. There are "troubling consequences" of a settlement approach that does not require "some rational connection between the fee award and the amount of the actual distribution to the class." *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1223 (2000) (O'Connor, J., writing on denial of certiorari) (advocating Supreme Court review "in an appropriate case").

Courts often reject settlements awarding more than 50 percent of the recovery to counsel. *See*, *e.g.*, *Pearson*, 772 F.2d at 781 (reversing "an outlandish 69 percent" fee); *Redman*, 768 F.3d at 630 (55 percent fee); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (reversing 56 percent fee); *Benson v. Enter. Leasing Co. of Orlando, LLC*, 2022 WL 4354846, at * 2 (M.D. Fla. Sept. 20, 2022); ("a fee award of 60% of the class fund is unreasonable"); *Flerlage v. US Foods, Inc.*, 2020 WL 4673155, at *11 (D. Kan. Aug. 12, 2020) (59.5 percent fee unreasonable); *Tabiti v. LVNV Funding LLC*, 2019 WL 13261836, at *2 (N.D. Ill. Oct. 11, 2019) (reversing

58 percent fee); *Cunningham*, 290 F. Supp. 3d at 225 (rejecting a 160 percent fee as "unreasonable and improper").

The "central consideration" in any class action settlement is "*what class counsel achieved for the members of the class.*" *Redman*, 768 F.3d at 633; *see also Lowery*, 75 F.4th at 994 ("The key factor in assessing the reasonableness of attorneys' fees is the benefit to the class members." (citing *In re Bluetooth*, 654 F.3d at 942). Monetary recovery for the class is "often the true measure of success," and should influence the fee award. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).

Judges can—and should—improve consumer outcomes in class actions by tying attorneys' fees to actual class member recovery. *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008). "This approach will not only encourage more realistic settlement negotiations and agreements, but also will drive class counsel to devise ways to improve how class action suits and settlements operate." *Id.* Assessing attorneys' fees in relation to class awards will encourage class counsel to focus on the needs and desires of the class and devise better notice programs, settlement terms, and claims procedures. For example, making fees depend on the amount class members receive would encourage counsel to negotiate settlement terms that prioritize benefits

delivered to the class. *See* Hensler, *Class Action Dilemmas*, at 491. Realigning these incentives will better protect consumers.

## CONCLUSION

The district court abused its discretion in approving the settlement agreement here. This Court should vacate the settlement approval and so that the district court can reassess the primary consideration in approving a settlement—the actual monetary benefit to the class.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General

*/s/ Patrick Valencia*
PATRICK VALENCIA
Deputy Solicitor General
BREANNE A. STOLTZE
*Assistant Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

ATTORNEYS FOR
AMICUS IOWA ATTORNEY
GENERAL'S OFFICE

**ADDITIONAL COUNSEL**

Steve Marshall
Alabama Attorney General

Treg Taylor
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

Ashley Moody
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Liz Murrill
Attorney General of Louisiana

Austin Knudsen
Attorney General of Montana

Dave Yost
Attorney General of Ohio

Alan Wilson
Attorney General of South
Carolina

Jonathan Skrmetti
Attorney General
of Tennessee

Jason S. Miyares
Attorney General of Virginia

Patrick Morrisey
Attorney General of West Virginia

Sean D. Reyes
Attorney General of Utah

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 4,171 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Patrick Valencia*
Deputy Solicitor General

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the eighteenth day of September, 2024, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Patrick Valencia*
Deputy Solicitor General